# Illinois Official Reports

## Appellate Court

---

### *People v. Chew*, 2016 IL App (1st) 141494

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DIAMOND CHEW, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-14-1494 |
| Filed | July 27, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-5907; the Hon. Mary Margaret Brosnahan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Jennifer L. Bontrager, all of State Appellate Defender's Office, of counsel), for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Christine Cook, and Lisanne P. Pugliese, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.<br>Justices Fitzgerald Smith and Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a bench trial, defendant Diamond Chew was found guilty of robbery and sentenced to an extended term of 10 years' imprisonment. On appeal, Chew contends that his sentence is excessive in light of certain mitigating factors. We disagree and affirm.

¶ 2    Chew's conviction arose from the March 5, 2012, gunpoint robbery of the victim, Gabriel Marshall, in the area of Lake Street and Laramie Avenue in Chicago. Chew, along with codefendants, Darius Bell and David Williams, were charged with (1) armed robbery with a firearm and (2) aggravated unlawful restraint. Their bench trials were severed and simultaneous. Because Chew does not contest his conviction, we need only summarize the evidence presented at trial.

¶ 3    Around 9 a.m. on March 5, 2012, Marshall and several other individuals stood a short distance from a Chicago Transit Authority (CTA) Green Line station at Laramie Avenue. A silver Nissan Altima pulled up by the station, and Marshall saw an individual, later identified as David Williams, struggling to get out of the vehicle because it stopped so close to the CTA stairs. Marshall then felt someone tapping on his shoulder, and he turned to see Williams with a gun. Williams told Marshall to "Give me what you got," and Marshall handed Williams his Pelle leather coat.

¶ 4    Meanwhile, the Altima moved forward, turned slightly, and stopped in front of Marshall so he could not run. From inside the Altima, Bell swung his legs out with his hand under his shirt and said, "Don't move." Chew, who was driving the Altima, said "Lights out." At that point, Marshall noticed a Chicago police van at a nearby stoplight. Williams got back into the Altima, and Chew drove southbound on Laramie Avenue away from the police van. Some bystanders flagged down the police, and Marshall ran into the middle of the street pointing in the direction the Altima had driven. The entire encounter was captured on a CTA security camera.

¶ 5    Meanwhile, the people who flagged down the police van told Officer Jeffrey Bertrand and his partner that a robbery had taken place and a sliver car containing the offenders, one of whom had a gun, was heading southbound. Bertrand saw the Altima and sent out a "flash message" regarding the incident over the police radio. Bertrand began pursuing the vehicle but ended his pursuit when he lost sight of the Altima. Officer Darlene Thomas and her partner responded to the message and curbed the Altima about 10 blocks from the scene of the robbery. They detained Chew and Bell, but Williams fled. Officers apprehended Williams about one block away where a loaded gun and a separate loaded magazine were later recovered.

¶ 6    Williams was brought back to the Altima where Chew and Bell were detained. Police brought Marshall to the detainees, and he identified all three men as the robbers. He also identified his Pelle coat, which the police recovered from the Altima.

¶ 7    The court denied Chew's motion for a directed finding, and he rested without presenting evidence. The court found Chew guilty of armed robbery with a dangerous weapon other than a firearm. Chew moved for a new trial arguing, in part, that he should be acquitted because the court found him not guilty of the charged offense, armed robbery with a firearm, and he was not charged with a second armed robbery count. The court denied Chew's motion but entered a conviction for robbery, a lesser included offense of armed robbery with a firearm. See *People*

*v. Spencer*, 2014 IL App (1st) 130020, ¶¶ 50-51. In denying the motion, the court noted that it found, "the witness called by the State, [the victim] was a very, very credible witness."

¶ 8 At sentencing, the State argued in aggravation that Chew's criminal history showed an escalating pattern of criminal activity. Specifically, in 2008 Chew was convicted of manufacture and delivery of a controlled substance, a Class 2 felony, and sentenced to two years of probation. Chew violated the terms of his probation that same year. He was convicted of possession of a controlled substance, a Class 4 felony, and received a four-year sentence with the recommendation of boot camp, which ran concurrently with his probation violation. He was convicted of soliciting unlawful business on three separate occasions between 2008 and 2009. His criminal conduct continued with misdemeanor convictions for possession of cannabis in 2010 and attempting to flee and elude the police in 2012. Finally, he committed the instant offense the same year. In light of his criminal background, Chew was eligible for extended-term sentencing, which the State requested.

¶ 9 Defense counsel highlighted certain mitigating evidence and stressed Chew's rehabilitative potential, noting that he had no history of violence prior to the commission of this offense, had maintained gainful employment, and was a 23-year-old single father. As a young man, counsel argued that Chew still had time to reflect on his history, avail himself of the resources in the penitentiary to get an education, and avoid "coming back here."

¶ 10 In allocution, Chew stressed the hardship his absence would impose on his young son and family. He claimed that he "didn't know what happened" and was shocked to be faced with the loss of a significant portion of his life because "somebody else did some things." He stated, "I got locked up in 2008. I did boot camp. And then this happened. It weren't no back-to-back thing." He explained that he was still young with his whole life ahead of him, and he wanted to "take another look at life and go about it the right way and switch [his] crowd of people."

¶ 11 The court stated, "I'm taking into account my review of my notes of the proceedings, my review of the presentence investigation [(PSI)] as well as the arguments of counsels." The court proceeded to address the relevant statutory factors in mitigation in detail. The court then found that Chew's criminal history was an aggravating factor. In announcing sentence, the court noted the seriousness of the offense and sentenced Chew to an extended term of 10 years in the Illinois Department of Corrections and 2 years of mandatory supervised release. Chew's motion to reconsider his sentence was denied.

¶ 12 At the outset, we note that the evidence is undisputed that the only weapon any of the offenders was armed with was a gun. Thus, the basis of the trial court's determination that Chew was armed with any other type of dangerous weapon is contrary to the record. The practice of some trial courts, in cases involving firearms, to find defendants guilty of the charged offense, but without a firearm, has not escaped notice by our supreme court. See *People v. Clark*, 2016 IL 118845, ¶ 26 n.2. The consequences of enhancements for offenses committed with a firearm are severe (see, *e.g.*, 720 ILCS 5/18-4(b) (West 2014) (15-20-25-to-life enhancement for aggravated vehicular hijacking); 720 ILCS 5/19-6(c) (West 2014) (home invasion); 720 ILCS 5/18-2(b) (West 2014) (armed robbery)), as this court has recognized in the context of juvenile sentencing (see, *e.g.*, *People v. Cavazos*, 2015 IL App (2d) 120444, ¶ 90; *People v. Gipson*, 2015 IL App (1st) 122451, ¶¶ 76, 80). But the remedy for the effects of such sentencing schemes lies with the Illinois legislature and is not advanced by a trial judge's refusal to convict a defendant of an offense supported by the evidence at trial. This is particularly true where the unenhanced offense on which the conviction is entered is

itself not supported by any evidence, a result that undermines the public's confidence in the judiciary's commitment to honor the rule of law.

¶ 13    On the merits, Chew maintains that his sentence is excessive and that the court abused its discretion because it (1) improperly weighed the mitigating factors where there was evidence that Chew's conduct was facilitated by someone other than himself and (2) failed to give adequate consideration to evidence of his rehabilitative potential.

¶ 14    A trial court's sentencing decisions are entitled to deference on appeal. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). Absent an abuse of discretion, a reviewing court will not disturb the sentence imposed by the trial court. *People v. Hauschild*, 226 Ill. 2d 63, 90 (2007). Where the sentence falls within the prescribed statutory limits, an abuse of discretion occurs only if the sentence imposed is greatly at variance with the purpose and spirit of the law or is manifestly disproportionate to the offense. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010).

¶ 15    We find that the trial court did not abuse its discretion in imposing the 10-year sentence. Chew was convicted of robbery, a Class 2 felony. 720 ILCS 5/18-1(a) (West 2012). He was eligible for an extended sentence within the 7- to 14-year statutory range in light of his criminal history. 730 ILCS 5/5-4.5-35(a) (West 2012);[1] 730 ILCS 5/5-5-3.2 *et seq.* (West 2012). The trial court expressly considered all the statutory mitigating factors and found that Chew's incarceration would be a hardship to his child and he intended to change his group of friends and alter his life path. 730 ILCS 5/5-5-3.1(a)(9), (11) (West 2012). Applying the factors in aggravation, the court recounted Chew's criminal history, including his two prior felonies, and found that a sentence greater than the minimum term of imprisonment was warranted. 730 ILCS 5/5-5-3.2(a)(3) (West 2012). In imposing the sentence, the court considered its notes from the proceedings, the seriousness of Chew's offense, the PSI, and the arguments presented by counsel. At sentencing, defense counsel emphasized Chew's rehabilitative potential, including his age, employment history and nonviolent criminal past, and that he was a single father.

¶ 16    Considering the factors in aggravation and mitigation, we cannot say that Chew's sentence was greatly at variance with the purpose and spirit of the law or manifestly disproportionate to the offense. See *Alexander*, 239 Ill. 2d at 215 (finding that the appellate court erred in reweighing the sentencing factors where the sentencing judge adequately considered the appropriate factors). We therefore find that the trial court did not abuse its discretion in sentencing Chew to a term in the middle of the statutory range.

¶ 17    Chew nevertheless contends there was evidence that his conduct was facilitated by another, and proper consideration of that mitigating factor (730 ILCS 5/5-5-3.1(a)(5) (West 2012)) entitles him to a lesser sentence. In considering the statutory mitigating factors, the court found "no evidence that [defendant's] conduct was facilitated by someone besides himself." Chew's argument on this point boils down to a claim that because he was "merely" the driver of the vehicle used in the robbery, alerted his co-offenders to the presence of police and drove them from the scene in an attempt to flee, we should find that Williams and Bell "facilitated" his

---

[1]Had the trial court convicted Chew of armed robbery with a firearm, he would have faced a sentencing range of 21 to 45 years. See 730 ILCS 5/5-4.5-25(a) (West 2014) (sentencing range of 6 to 30 years for Class X felony); 720 ILCS 5/18-2(b) (West 2014) (15-year sentencing enhancement for armed robbery while armed with a firearm).

conduct. But there is no evidence in the record that Chew was anything other than a willing participant in the robbery, and thus his attempt to invoke this mitigating factor fails.

¶ 18 Chew next contends that the court inadequately considered his rehabilitative potential and his sentence is disproportionate to the seriousness of the offense as a result. Although a sentence must strike a proper balance between the protection of society and the rehabilitation of a defendant, the trial court is not required to give defendant's rehabilitative potential more weight than the seriousness of the offense. *People v. Anderson*, 325 Ill. App. 3d 624, 637 (2001). And particularly in light of Chew's refusal to take responsibility for his actions, claiming that he "did not know what happened" and was convicted only because "somebody else did some things," we cannot say the trial court abused its discretion in determining that Chew's rehabilitative potential did not warrant a lower sentence.

¶ 19 For the foregoing reasons, we find no abuse of discretion and affirm the judgment of the circuit court of Cook County.

¶ 20 Affirmed.