**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210310-U

Order filed March 28, 2023_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Tazewell County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | Appeal No. 3-21-0310 |
| v. | ) | Circuit No. 95-CF-578 |
| | ) | |
| BRET G. RAILEY, | ) | Honorable |
| | ) | Katherine S. Gorman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Presiding Justice Holdridge and Justice Peterson concurred in the judgment.

**ORDER**

¶ 1      *Held*:   The trial court considered all applicable statutory factors when it imposed a *de facto* life sentence. The court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and section 111-3(c-5) of the Code of Criminal Procedure when it imposed extended-term sentences, but the errors were harmless. Affirmed.

¶ 2      Defendant, Bret G. Railey, appeals the Tazewell County circuit court's sentences imposed

upon remand for home invasion and aggravated criminal sexual assault, arguing: (1) that the

sentencing court failed to properly consider the mitigation factors for minor defendants required

by 730 ILCS 5/5-4.5-105(a) (West 2020), and (2) that the extended term sentences imposed

violated 725 ILCS 5/111-3(c-5) (West 2020). We affirm.

¶ 3                                  I. BACKGROUND

¶ 4         A stipulated bench trial in April 1997 included the following. The victim, L.H., testified she was born on March 16, 2007. She was crocheting in the living room of her Morton, Illinois, home on November 22, 1995, when she heard a knock at her door. She opened her door to defendant, whom she did not know, and he forced his way into her home. He ultimately forced L.H. onto the floor of her living room, removed her pants and placed his penis in her vagina. He then turned her around onto her stomach and placed his penis in her anus. Defendant went to the dining room and took money L.H. had in an envelope. He then returned to the living room and told her to close her eyes after which he went into the kitchen. Upon defendant's return he informed L.H. to keep her eyes closed because he was going to blind her so she could not identify him. Defendant then stabbed her below each of her eyes with an unknown object. Defendant went through her purse and wallet and then fled. She was transported to the hospital by Morton paramedics.

¶ 5         The stipulated testimony of Officer J.M. Phillips recounted that he responded to L.H.'s house and found her with puncture wounds and blood running down her face and considerable swelling under both eyes. The stipulated testimony of Dr. Gene Couri of the St. Francis Medical Center Emergency Room explained that he treated L.H. in the emergency department where he observed "a strong probability of ejaculation in both the vaginal and anal cavities" when he completed the Illinois State Police sexual assault kit. The stipulated testimony of Illinois State Police forensic scientist Kevin Zeeb recounted that semen was recovered from L.H.'s clothing. It was further stipulated that DNA from the recovered semen matched defendant's DNA profile.

2

¶ 6　　　　The stipulated testimony of Detective Bill Roth of the Morton Police Department included how L.H., with difficulty given her injured eyesight, was able identify defendant as her assailant from a photo array. Further, Roth interviewed defendant who admitted to vaginally and anally penetrating L.H. with his penis and cutting her beneath each eye in an attempt to blind her.

¶ 7　　　　The trial judge found defendant, 17-year-old Bret G. Railey, guilty of home invasion and two counts of aggravated criminal sexual assault. Defendant was sentenced to consecutive 50-year terms of imprisonment for the aggravated criminal sexual assault charges and a concurrent 50-year term of imprisonment for home invasion, "for a total to be served of 100 years which under truth-in-sentencing would be served at 85% of the total." On direct appeal, this court affirmed defendant's conviction and modified the sentence to be served with day-for-day credits. *People v. Railey*, No. 4-97-0905 (1999) (unpublished order under Illinois Supreme Court Rule 23).

¶ 8　　　　Following the United State Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 480 (2012), and the Illinois Supreme Court's decision in *People v. Buffer*, 2019 IL 122327, defendant filed a postconviction petition for resentencing consistent with new laws applicable to sentencing minors. The trial court granted defendant's postconviction petition, vacated his sentence, and ordered a resentencing hearing. Upon a finding that his offenses warranted an extended term, defendant was resentenced to two consecutive 50-year terms of imprisonment on the aggravated criminal sexual assault charges and a concurrent 50-year term of imprisonment for home invasion.

¶ 9　　　　Defendant filed a post-sentencing motion challenging the resentencing court's imposition of sentences beyond the statutory cap of 30 years where there had been no jury finding in regard to aggravating factors to support an extended-term sentence. The motion was denied.

¶ 10　　　　Defendant timely appealed.

¶ 11　　　　　　　　　　　　　　II. ANALYSIS

3

¶ 12        On appeal, defendant argues the sentencing court did not meaningfully apply the statutory factors in mitigation when it imposed a *de facto* life sentence. Defendant does not argue the trial court failed to apply a statutory factor, so we construe this as an argument that the trial court abused its discretion. See *People v. Blakey*, 2015 IL App (3d) 130719, ¶ 55 (citing *People v. Coleman*, 166 Ill. 2d 247, 258 (1995)) ("We will not disturb a sentence that falls within the statutory limits unless it was an abuse of discretion."). "Other than the crime itself, committed by a badly abused 17-year-old child," defendant argues, "nothing in the record supports the mistaken conclusion that this 43-year-old man meets the constitutional prerequisite of incorrigibility." He insists that meaningful application of the statutory factors *requires* adjusting the sentence. Further, he claims the trial court found defendant permanently incorrigible "without evidence to support" the finding.

¶ 13        When sentencing a person who is under 18 years of age during the commission of a crime, a court must consider certain additional factors in mitigation when fashioning an appropriate sentence. 730 ILCS 5/5-4.5-105(a) (West 2020). We review whether the trial court made an informed sentencing decision based on the totality of the circumstances, conscious that no single factor is dispositive. *People v. Lusby*, 2020 IL 124046, ¶ 35. Correspondingly, a court is not required to give a defendant's rehabilitative potential greater weight than the seriousness of the offense. *People v. Bryant*, 2016 IL App (1st) 140421, ¶ 17. A reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed the sentencing factors differently. *People v. Alexander*, 239 Ill. 2d 205, 213 (2010).

¶ 14        Here, the records indicate that the resentencing court considered all applicable statutory factors, including defendant's youth and its attendant characteristics (see 730 ILCS 5/5-4.5-105(a)(1) (West 2020)), as well as the PSI report, the evidence and arguments presented, and the

4

entire court file. Defendant cites no authority for the proposition that a defendant in his position cannot be given a discretionary *de facto* life sentence if the trial court considers all relevant mitigating factors. Rather, defendant essentially argues the trial court did not weigh the applicable factors correctly, overemphasizing the seriousness of the offense. But as defendant acknowledges, the court explicitly considered his rehabilitative potential when it discussed his "chaotic" childhood ("the other people around you failed you and that is just a sad reality that caused you no doubt to act out in ways that were extraordinarily detrimental to you"). The court had to balance defendant's history against the seriousness of the offense, which it found was "extremely brutal and heinous." We cannot say the court abused its discretion in sentencing defendant to a *de facto* life term.

¶ 15    Defendant also argues the trial court imposed an extended-term sentence in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and section 111-3(c-5) of the Code of Criminal Procedure. In *Apprendi*, the United States Supreme Court held that any fact that increases the penalty for a crime beyond the statutory maximum (other than the fact of a prior conviction) must be submitted to a jury and proved beyond a reasonable doubt. *Id.* at 490; see also *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004) ("[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" (Emphasis in original.)). Section 111-3 of the Code of Criminal Procedure codifies *Apprendi* and provides, in relevant part,

"Notwithstanding any other provision of law, in all cases in which the imposition of the death penalty is not a possibility, if an alleged fact (other than the fact of a prior conviction) is not an element of an offense but is sought to be used to increase the range of penalties for the offense beyond the statutory maximum that could otherwise be imposed

5

for the offense, the alleged fact must be included in the charging instrument or otherwise provided to the defendant through a written notification before trial, submitted to a trier of fact as an aggravating factor, and proved beyond a reasonable doubt. \*\*\*." 725 ILCS 5/111-3(c-5) (West 2020).

¶ 16   Here, the trial court imposed extended-term sentences after finding defendant's offenses reflected "extremely brutal and heinous behavior" and the victim was 60 years of age or over. 720 ILCS 5/12-11 (home invasion, a class X felony), 12-14(a)(5) (aggravated criminal sexual assault, victim 60 years of age or over, a class X felony) (West 1994); 730 ILCS 5/5-8-1(a)(3) (term for Class X felony is 6 to 30 years), 5-8-2(a)(2) (extended term for Class X felony is 30 to 60 years), 5-5-3.2(b)(4)(ii) (victim 60 years of age or older permits extended term), 5-5-3.2(b)(2) (exceptionally brutal or heinous behavior indicative of wanton cruelty permits extended term) (West 1994).

¶ 17   As it relates to the trial court's findings, we note that the stipulated-to evidence proved that on November 22, 1995, defendant forced his way into the victim's home, sexually assaulted her vaginally and anally, and stabbed her about both eyes so she would be unable to identify him; further, it was stipulated that the alleged victim was born on March 16, 1907. Taking care not to utilize elements of the offense to authorize extended-term sentencing, we note that the aggravated criminal sexual assault convictions were arguably extended-term eligible because they were committed in a brutal and heinous manner indicative of wanton cruelty (stabbing victim's eyes to avoid identification). See 730 ILCS 5/5-5-3.2(b)(2) (West 1994). The home invasion conviction was arguably extended-term eligible because the victim was over 60 years of age when the offense was committed. See *id.* § 5-5-3.2(b)(4)(ii) (victim 60 years of age or older permits extended term).

6

¶ 18    The State concedes that "factors used to increase defendant's sentences through the extended-term statute were not in the charging instrument, nor were they otherwise provided to defendant in writing." However, the State argues we should nevertheless affirm the trial court's imposition of an extended-term sentence because: (1) defendant forfeited his *Apprendi* claim, (2) defendant invited any error related to his *Apprendi* argument, (3) *Apprendi* cannot be applied retroactively, and (4) the trial court's extended term sentences were "overwhelmingly supported" by the stipulated facts. As to the first three bases urged by the State, we disagree that they preclude consideration of defendant's *Apprendi* claim. Defendant did not forfeit his *Apprendi* claim; it was made at the first opportunity, *i.e.*, in his motion to reconsider sentence after the trial court imposed extended term sentences. Nor did defendant invite the *Apprendi* error; he urged a non-extended-term sentence at the sentencing hearing on remand. Finally, defendant does not ask us to apply *Apprendi* retroactively; at the time of the remanded sentencing hearing, *Apprendi* had been decided. We do, however, agree with the State's implicit argument that the *Apprendi* error was harmless in that the stipulated facts "overwhelmingly supported" the imposition of extended term sentences. The State bears the burden of persuasion to show lack of prejudice despite the error, and the State carried its burden here. See *People v. Jackson*, 2022 IL 127256, ¶ 23 n.1.

¶ 19    An *Apprendi* violation does not warrant resentencing "where there is overwhelming evidence that the crime was committed in a brutal and heinous manner indicative of wanton cruelty." *People v. Kaczmarek*, 207 Ill. 2d 288, 302 (2003). Behavior is heinous if it is "hatefully or shockingly evil; grossly bad; enormously and flagrantly criminal." *Id.* at 303. Behavior is brutal if it is "grossly ruthless, devoid of mercy or compassion; cruel and cold-blooded." *Id.* "Finally, 'wanton cruelty' requires proof that the defendant consciously sought to inflict pain and suffering on the victim of the offense." *Id.* We agree with the State that the stipulated facts overwhelmingly

supported a finding that the aggravated criminal sexual assaults were committed in a brutal and heinous manner indicative of wanton cruelty where defendant stabbed the victim in her eyes after raping her so that she could not identify him later. "We have no doubt that a jury, presented with these facts, would have found that the crime was committed in a brutal and heinous manner, indicative of wanton cruelty." *Kaczmarek*, 207 Ill. 2d at 304. Accordingly, the trial court's *Apprendi* violation was harmless as it relates to the aggravated criminal sexual assault sentences.

¶ 20 We likewise find that there was overwhelming evidence that the victim was over 60 years of age given the stipulation that she was born in 1907. Accordingly, the trial court's *Apprendi* violation was likewise harmless as it relates to the home invasion sentence.

¶ 21 III. CONCLUSION

¶ 22 The judgment of the circuit court of Tazewell County is affirmed.

¶ 23 Affirmed.